IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN

| | |
|---|---|
| ANGEL PEREZ,<br><br>    Plaintiff,<br><br>vs.<br><br>CHICAGO POLICE OFFICERS JORGE L. LOPEZ , EDMUND ZABLOCKI, JOSEPH WAGNER , HERBERT BETANCOURT, MATTHEW CLINE, JOHN DOLAN,<br>and the CITY OF CHICAGO<br>    Defendants. | No. 13 C 4531<br><br>MAGISTRATE ROWLAND<br>JUDGE ROBERT DOW JR<br>JURY DEMAND |

**FIRST AMENDED COMPLAINT**

**JURISDICTION**

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. sections 1983 et seq. and 1988; the Judicial Code, 28 U.S.C. sections 1331, and 1343(a); the Constitution of the United States; and supplemental jurisdiction pursuant to 28 U.S.C. section 1367.

**PARTIES**

**Plaintiff**

2. Plaintiff, Angel Perez, is An adult male who, at all relevant times, was a resident of Chicago, Illinois, Cook County.

**Defendants**

3. Defendant, Jorge L. Lopez ("Lopez"), was at all relevant times, was working as a Chicago Police Officer, Star Number 17836, and was a resident of Cook County, Illinois. At all relevant times, Defendant Lopez was acting in the course of his employment and under color of

law. Defendant Lopez is being sued in his individual capacity.

Defendant, City of Chicago, ( the "CITY") is and was a municipality and was, at all relevant times, the employer and principal of Defendant Lopez and all other unidentified police officers that arrested and tortured the plaintiff, and as such, is and was at all relevant times responsible for the supervision, training, policies, practices, and customs of the Chicago Police Department and its officers.

## FACTS COMMON TO ALL COUNTS

4. On October 20, 2012 at approximately 5:00 p.m. plaintiff was working as a delivery driver for Castillo Delivery Service.

5. At the aforementioned date and time, the plaintiff was returning to Desorak Restaurant at 1514 W. Taylor Street, Chicago, Illinois, following a delivery.

6. As the plaintiff traveled eastbound on Taylor Street near the intersection of Taylor and Ashland Streets, the plaintiff was pulled over by an unmarked police car by flashing headlights.

7. Two Chicago Police officers approached the plaintiff's car, and did not identify themselves, but called each other George (Defendant Lopez) and John.

8. The officer that identified himself as John approached plaintiff's driver's side door, opened plaintiff's car door and pulled the plaintiff out of his car.

9. Defendant Lopez opened the passenger door and began searching plaintiff's car.

10. Plaintiff was handcuffed and placed into the unmarked police car. Officer John then drove plaintiff's car to the Harrison Street Police Station. Defendant Lopez followed in the unmarked car with the plaintiff handcuffed in the back seat. While on the way to the police

station, the plaintiff asked that his lawyer be contacted.

11. Upon arriving at the police station, the plaintiff was searched in the parking lot. Plaintiff was then brought into the Harrison Street Police Station through a back entrance, brought to a small room and handcuffed to a bar on the wall.

12. Defendant Lopez took the plaintiff's cellular telephone and left the room leaving Officer John in the room with the plaintiff. Plaintiff was not free to leave the police station as he was handcuffed to the wall the entire time he was in the police station.

13. Defendant Lopez returned to the room and the two officers began assaulting the plaintiff with questions regarding robberies and drug dealers in the Taylor Street area. Plaintiff responded that he did not know anything about robberies or drug dealings in the Taylor Street area and again and repeatedly requested that the officers call his lawyer. Plaintiff's lawyer was never contacted and the questioning continued. The officers were particularly interested in why the plaintiff had the telephone number of an individual by the name of "Dwayne" in his telephone.

14. The interrogation of the plaintiff continued for approximately one and a half to two hours. At the end of which the officers informed the plaintiff that they were going to harass him everyday on Taylor Street until they got what they wanted from him. Plaintiff was un-handcuffed, given his car keys and told he could leave.

15. On October 21, 2012, Defendant Lopez called plaintiff's cell phone and told the plaintiff that what took place the night before was a mistake and that he needed the plaintiff to sign some papers so that his car would not be towed. Defendant Lopez instructed the plaintiff to meet him at Al's Beef on Taylor Street at 3:00 p.m. that day.

16. The plaintiff went to Al's Beef at 3:00 p.m. and Defendant Lopez arrived in a police squad with another officer that was tall, with red hair and a beard, whom the plaintiff believes was identified as a Sergeant (this individual is hereafter referred to as " the Sergeant").

17. The officers drove to the back of the parking lot and the plaintiff followed them to that location. The Sergeant exited the squad car grabbed the plaintiff and slammed his head on to the trunk of his car, searched plaintiff, handcuffed plaintiff with his hands behind his back and placed him in the squad car.

18. Plaintiff was then taken back to the Harrison Street Police station to a second floor room with chairs and a table. Again, plaintiff was handcuffed to a bar, and this time he was also placed in ankle shackles.

19. Plaintiff was held against his will in the room for several hours handcuffed and shackled, and not free to leave the custody of the defendants. While the in the room several other officers (approximately six officers) entered the room during the next several hours joining Defendant Lopez and the Sergeant threatening the plaintiff with sending him to the Cook County jail to be raped by gang members. Further, that the (the officers) could do whatever they wanted and that they would plant evidence on him and his family members if he continued to refuse to cooperate with them. Still, further that if he did not cooperate they would charge him a conspiracy to obstruct justice.

One of the officers in the room identified himself as the "Commander."

20. Plaintiff repeatedly requested his lawyer; that request was not acknowledged by the officers.

21. The officers wanted the plaintiff to call or text "Dwayne" and set-up a drug

4

purchase, but he refused to call or text Dwayne.

22. After a period of time refusing to call or text Dwayne, the officers began to pull and contort the plaintiff's body while he was handcuffed to the wall and shackled at his ankles causing the plaintiff severe pain. At one point, the Sergeant sat on the plaintiff's chest and placed his palms on the plaintiff's eye sockets and pushed hard against them causing plaintiff severe pain. The Sergeant also drove his elbows into plaintiff's back and head causing severe pain. Defendant Lopez was in the room at the time and did not intervene.

23. In an attempt to contact the outside world, plaintiff agreed to make the call and he attempted to call a friend of his to inform him what was transpiring at which time an officer took plaintiff's telephone and hung-up the call.

24. After several hours of verbal and physical torture, Defendant Lopez and the Sergeant were alone in the room with the plaintiff. The officers told plaintiff that if he refused to cooperate with them that they were going to give him a "little taste" of what he would be getting at the Cook County jail. They put plaintiff over a chair and pulled down his pants, and Defendant Lopez said "I hear that a big black nigger dick feels like a gun up your ass."

25. Then Defendant Lopez and/or the Sergeant, knowing their actions created a strong likelihood of great bodily harm and mental anguish, inserted a cold metal object, believed to be one of officer's service revolvers, into the plaintiff's rectum causing the plaintiff severe pain and humiliation. The two officers laughed hysterically while inserting the object into the plaintiff's rectum.

26. The Sergeant then said "I almost blew your brains out." The officers told the plaintiff that they would continue to insert the gun into his rectum until he cooperated with them.

27.  Plaintiff began to cry and agreed to cooperate with the officers.

28.  The officers then took the ankle shackles off the plaintiff and took him from the room to a car waiting outside. Plaintiff was still handcuffed at this time. Once in the car, the plaintiff was instructed, by the officers, to call Dwayne and set-up a purchase of either heroin or crack cocaine. Plaintiff called Dwayne but Dwayne did not answer the telephone. Plaintiff was then instructed to text Dwayne, which he did and Dwayne then called the plaintiff.

29.  Plaintiff spoke to Dwayne about purchasing one gram of heroin and agreed to meet Dwayne at an agreed location and time. The police then brought plaintiff to his car, provided the plaintiff with money to purchase the heroin, a box believed to be a GPS device and an audio recording device to record the transaction.

30.  Plaintiff completed the purchase from Dwayne for the Chicago Police and returned the drugs and equipment to the police. The officers then wanted plaintiff to sell drugs to Dwayne. Plaintiff told the officers that he would not be involved again with them.

31.  Plaintiff was released from police custody at approximately 9:30 p.m. on October 21, 2012. Defendant Lopez subsequently repeatedly called plaintiff's cellular telephone from his cellular telephone requesting additional meetings with the plaintiff. The Lopez calls stopped for a period after the plaintiff contacted the Independent Police Review Authority for the Chicago Police Department and complained about the events of October 20 and October 21, 2012..

32.  Defendant Lopez arrested, without probable cause, restrained and refused to release the plaintiff from custody on both October 20, 2012 and October 21, 2012.

33.  At no time on either October 20, 2012 or October 21, 2012, prior to plaintiff's seizure and torture, did the plaintiff commit a crime.

6

## COUNT I
## EXCESSIVE FORCE IN VIOLATION OF 42 U.S.C. §1983 - DEFENDANT LOPEZ

34. Plaintiff re-alleges and reincorporates paragraphs 1 through 33 as if fully set forth herein as his paragraph 34.

35. At all relevant times, Defendant Lopez had a legal duty to refrain from using unnecessary and reasonable force under the circumstances.

36. The acts of Defendant Lopez in a) by handcuffing and shackling the plaintiff's ankles; b) by refusing to contact plaintiff's attorney; c) refusing to allow the plaintiff to leave the police station/room; d) by physically torturing the plaintiff on October 21, 2012; e) by pulling the plaintiff's pants down, and by inserting a metal object into the plaintiff's rectum, or by assisting another officer in inserting a metal object into the plaintiff's rectum; and f) by torturing the plaintiff until he agreed to commit a crime to stop the torture, constituted an unreasonable seizure, excessive force and deprived the plaintiff of his right to be free from such conduct as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

37. At all relevant times, Defendant Lopez's action and/or omissions as they pertained to the plaintiff were done maliciously, wilfully, wantonly, with deliberate indifference, and/or in reckless disregard for the plaintiff's safety and constitutional rights.

38. The acts and/or omissions of Defendant Lopez proximately caused the plaintiff to suffer both physical and psychological injuries, pain, suffering, humiliation and fear in the past and in the future, some of the plaintiff's injuries will be permanent.

WHEREFORE, the plaintiff, Angel Perez, demands substantial compensatory damages

against Defendant Jorge L. Lopez, Star No. 17836, for the plaintiff's physical and emotional trauma, pain, injury, suffering, fear and humiliation, and additionally, because the defendant acted maliciously, wilfully, wantonly, with deliberate indifference, and/or in reckless disregard for the plaintiff's constitutional rights, plaintiff demands substantial punitive damages from this defendant, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT II
## § 1983 DUE PROCESS CLAIM FOR FAILURE TO INTERVENE/PROTECT

39. Plaintiff re-alleges and reincorporates paragraphs 1 through 33 as if fully set forth herein as his paragraph 39.

40. Defendant Lopez, failed to intervene and/or protect the plaintiff from the Sergeant and the other unidentified officers acts when they a) handcuffed and shackled the plaintiff's ankles; b) allowed the Sergeant to physically attack the plaintiff and by twisting and contorting the plaintiff's body; c) refusing to allow the plaintiff to leave the police station/room, or the control and/or custody of the police; d) by standing by and allowing another officer to insert a metal object into the plaintiff's rectum, and e) by failing to stop any of the above until the plaintiff agreed to commit a crime, knowing said acts and his failure to protect Angel Perez, or intervene to protect him, from these acts created a substantial risk of great bodily harm and mental anguish depriving plaintiff of his constitutional rights without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

41. Said acts and/or omissions of Defendant Lopez caused pain and suffering to the plaintiff of a physical and mental nature.

8

42. The acts and/or omissions of Defendant Lopez proximately caused the plaintiff to suffer both physical and psychological injuries, pain, suffering, humiliation and fear in the past and in the future, some of the plaintiff's injuries will be permanent.

WHEREFORE, the plaintiff, Angel Perez, demands substantial compensatory damages against Defendant Jorge L. Lopez, Star No. 17836, for the plaintiff's physical and emotional trauma, pain, injury, suffering, fear and humiliation, and additionally, because the defendant acted maliciously, wilfully, wantonly, with deliberate indifference, and/or in reckless disregard for the plaintiff's constitutional rights, plaintiff demands substantial punitive damages from this defendant, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

## COUNT III
## STATE LAW - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## DEFENDANT LOPEZ

43. Plaintiff re-alleges and reincorporates paragraphs 1 through 42 as if fully set forth herein as his paragraph 43.

44. The actions of the Defendant Lopez, as set forth above, placed the plaintiff in fear of his life and safety and in fear of receiving an assault and battery, as well as causing him the emotional distress of fearing for his life and being sodomized again.

45. The actions of Defendant Lopez, constituted extreme and outrageous conduct and were done deliberately and intentionally and in a wilful and wanton manner.

46. Defendant Lopez intended that his conduct to inflict severe emotional distress and/or knew there was a high probability that his conduct would cause severe emotional distress.

47. The conduct of Defendant Lopez did in fact cause Angel Perez to suffer severe

emotional distress.

WHEREFORE, the plaintiff, Angel Perez, demands substantial compensatory damages against Defendant Jorge L. Lopez, Star No. 17836, for the plaintiff's physical and emotional trauma, pain, injury, suffering, medical expenses, loss of a normal life, fear and humiliation, and additionally, because the defendant acted maliciously, wilfully, wantonly, with deliberate indifference, and/or in reckless disregard for the plaintiff's constitutional rights, plaintiff demands substantial punitive damages from this defendant, as well as costs, attorneys fees, and whatever additional relief this Court deems equitable and just.

### COUNT IV
### MONELL POLICY PRACTICE AND CUSTOMS VIOLATION
### DEFENDANT CITY OF CHICAGO

48. Plaintiff re-alleges and reincorporates paragraphs 1 through 47 as if fully set forth herein as his paragraph 48.

49. The actions of Defendant Lopez, as alleged above, were done pursuant to one or more *de facto* policies, practices and/or customs of the Chicago Police Department, and therefore, the City of Chicago.

50. On and before October 20, 2012, Defendant City of Chicago and its Police Department had interrelated *de facto* policies, practices, and customs which included, inter alia, the failure to properly train, supervise, discipline, counsel and otherwise control its police officers, and thereby allowing them to engage in the excessive use of force, torture and other police abuses, particularly in case where officers were allowed to torture and sodomize the plaintiff within a police station.

51. In particular, Defendant Lopez, as well as several other police officers, were

allowed to handcuff and shackle an individual that had not committed a crime, and had not been charged with a crime. The officers were also allowed to verbally and physically torture the plaintiff without interruption, for several hours, inside the 11th District Police Station. Moreover, during the hours of torture, supervising officers came into the room to identify themselves as high ranking officers, thereby condoning the continued torture. The acceptance of the torture, sodomy, and the participation by Defendant Lopez, the Sergeant and several other Chicago Police officers, created a *de facto* policy throughout the 11th District of the Chicago Police Department of allowing and promoting the use of these technics on individuals innocent of any crime, like the plaintiff.

52.     As a direct and proximate cause of these policies, Angel Perez's constitutional protected rights under the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, as applied by 42 U.S.C. section 1983, were violated and the defendant is liable to Angel Perez for his injuries, pain, suffering, mental anguish, and humiliation.

WHEREFORE, the plaintiff, Angel Perez, demands compensation for his compensatory damages against the City of Chicago, including but not limited to, his physical injuries, pain, suffering, mental anguish, medical expenses, loss of a normal life, and humiliation, and such other relief as this Court deems just and equitable.

## COUNT VI
### RESPONDEAT SUPERIOR - CITY OF CHICAGO

53.     Plaintiff re-alleges and reincorporates paragraphs 43 through 47 as if fully set forth herein as his paragraph 53.

54.     The aforesaid acts and state law violations of the police officers as set forth above,

were performed in the scope and course of their employment and were done so maliciously, wilfully, wantonly, with deliberate indifference, and/or in reckless disregard for the plaintiff's constitutional rights, and the City of Chicago is therefore liable as principal for the actions of its employees and/or agents, under the doctrine of respondeat superior, for the state law claims set forth in Count III above.

WHEREFORE, the plaintiff, Angel Perez, demands compensation for his compensatory damages against the City of Chicago, including but not limited to, his physical injuries, pain, suffering, mental anguish, medical expenses, loss of a normal life, and humiliation, and such other relief as this Court deems just and equitable.

## COUNT VI
## INDEMNIFICATION PURSUANT TO 745 ILCS 10/9-102

55. Plaintiff re-alleges and reincorporates paragraphs 1 through 54 as if fully set forth herein as his paragraph 55.

56. Illinois law provides that public entities are directed to pay any tort judgment for compensation damages for which its employees are liable for. Defendant Lopez, as well as the other unidentified Chicago Police Officers were, at all relevant times, acting in the scope and course of their employment as members and agents of the Chicago Police Department under the color of law.

57. Defendant City of Chicago is liable as principal for all torts committed by its employees.

WHEREFORE, should defendant, Jorge Lopez or any other police officer be found liable on one or more of the claims set forth in above, Plaintiff hereby demands that, pursuant to 745

ILCS 10/9-102, the defendant City of Chicago be found liable for any judgment or settlement for damages obtained against said police officer defendants as well as for all attorneys' fees and costs awarded or otherwise obtained.

### JURY DEMAND

Plaintiff, Angel Perez, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

**Angel Perez/Pro Se**

PRO SE
ANGEL PEREZ
1032 N. Spaulding Ave.
Chicago IL, 60651
Decem.et.tres@gmail.com
312-286-6594