# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANGEL PEREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 13-cv-4531 |
| v. | ) |
| | ) |
| CITY OF CHICAGO, et al | ) Judge Robert M. Dow, Jr. |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's motion for leave to file a second amended complaint [106]. Defendants oppose the motion, arguing that there has been undue delay, that allowing the amendment would unduly prejudice them, and that the new claims are futile. For the reasons set forth below, Plaintiff's motion [106] is granted. However, Defendants' motion to dismiss Count VII of Plaintiff's revised amended complaint [76] is stricken as moot, as that claim is not alleged in the second amended complaint.

## I.  Factual and Procedural Background

This case arises from the alleged unlawful detainment, interrogation, and treatment of Plaintiff Angel Perez and four other proposed plaintiffs at a police warehouse at the intersection of South Homan Street and West Filmore Avenue in Chicago ("Homan Square"). See [106-1], Sec. Am. Compl. ("SAC") at 4. Plaintiff alleges that on October 19, 2012, he was taken to the nearby Harris Street Police Station, handcuffed to a wall, and questioned about robberies and drug transactions in the Taylor Street area of Chicago. See *id*. at 5–6. Despite his repeated requests, Plaintiff was not permitted to contact a lawyer. *Id*. Approximately two hours later, Plaintiff was released; as he was leaving, police officers stated that they would continue to harass

him until they got the information that they wanted. *Id.* at 6.

The next day, Plaintiff met Defendant Officers Lopez and Zablocki at an Al's Beef restaurant on Taylor Street at Lopez's request. The officers drove to the rear of the parking lot and Plaintiff followed them. Zablocki got out of his car, threatened Plaintiff, slammed his head onto the police vehicle, and handcuffed him. Plaintiff then was taken to Homan Square.[1] See [106-1], SAC at 7. Plaintiff alleges that the Chicago Police Department uses Homan Square to hold citizens "incommunicado"—that is, without the formal processing procedures or acknowledgment of the detention—so that police may interrogate citizens and coerce them to cooperate with investigations. See *id.* at 4.

According to Plaintiff, at Homan Square he was handcuffed to a bar and placed in leg shackles. Officers then allegedly spent the next several hours torturing and threatening Plaintiff to coerce him to contact an individual named Dwayne, apparently a local drug dealer, to set up a drug purchase. [106-1], SAC at 7–8. After Plaintiff refused, Defendants Zablocki and Lopez allegedly sodomized Plaintiff with what Plaintiff believes to have been one of their service revolvers. *Id.* at 9. They threatened to continue unless Plaintiff cooperated with them. Plaintiff finally agreed to set up a meeting with Dwayne, and the officers provided him with money and a recording device. *Id.* at 9–10. After completing the purchase and giving the drugs to the officers, Plaintiff was released.

Plaintiff filed his original complaint [1] against the City of Chicago and Officer Lopez, the only officer whose name he knew at the time, on July 20, 2013. Plaintiff brought claims under 42 U.S.C. § 1983 for excessive force and failure to intervene, a claim for intentional infliction of emotional distress ("IIED"), a *Monell* claim against the City for unconstitutional

---

[1] The previous version of Plaintiff's complaint alleged that Plaintiff was taken to "what he believed was again [the] Harrison Street Police station." [74], Am. Compl. at 4.

policies and practices that allowed the alleged excessive force and abuse, and respondeat superior and indemnification claims. See [1], Compl. Magistrate Judge Rowland bifurcated the *Monell* claim and stayed discovery on it. See [54]. Plaintiff, then proceeding pro se, filed an amended complaint that added five Chicago police officers as defendants, as well as a new claim for tampering with a witness under 18 U.S.C. § 1512. See [74], Am. Compl. Defendant filed a motion to dismiss the witness tampering claim [76], which is stricken as moot, as Plaintiff has omitted the claim from his proposed second amended complaint. Plaintiff has now retained new counsel.

In his second amended complaint, Plaintiff seeks to add Jose Martinez, Juanita Berry, Calvin Coffey, and Estephanie Martinez as plaintiffs and to bring class claims. The proposed plaintiffs also allegedly were held at Homan Square, where they were interrogated and mistreated by Chicago police offices. Coffey and Berry were held in February, 2015, Jose Martinez in September 2011, and Estephanie Martinez in August 2006. See [106-1], SAC at 11–14.

Count I is styled as a § 1983 "secret arrests" class claim against the City of Chicago for alleged policies and practices—including secretly detaining citizens at places like Homan Square, interrogating citizens without Mirandizing them, attempting to coerce false confessions, denying contact with attorneys or family, and refusing access to food, water, and restrooms—that violate the First and Fourth Amendments. Count I includes two proposed classes: (1) all persons detained by Chicago police where no record of the detainment was created within a reasonable amount of time (Plaintiff suggests one hour from the initial detainment), and (2) all persons who may in the future be subject to the alleged secret arrests. Count II is brought by proposed plaintiffs Estephanie Martinez and Coffey against the City of Chicago for deprivations of

3

adequate accommodations in violation of the Fourth Amendment. Martinez and Coffey allege that the City has policies and practices of detaining citizens overnight without providing them minimally adequate accommodations for sleeping. Count II also includes two classes: (1) all persons who were detained without public record of the detainment between the hours of 10 p.m. and 6 a.m., and (2) all persons who may in the future be subject to unconstitutional overnight accommodations. Plaintiffs also seek to bring individual § 1983 claims against the named and unknown Defendant officers for excessive force (Count III) and failure to intervene in excessive force (Count IV), as well as state law IIED claims (Count V) and an indemnification claim against the City pursuant to 745 ILCS 10/9-102 (Count VI).

## II. Legal Standard

The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely give[n] * * * when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, courts may deny leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Delay alone is normally insufficient to deny a motion to amend. See *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (internal quotation marks omitted). But "the longer the delay, the greater the presumption against granting leave to amend." *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) (internal quotation marks omitted). An amended complaint is futile if it would not withstand a motion to dismiss. *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013).

**III.     Analysis**

Defendants argues that the Court should deny leave to amend because (1) there has been undue delay and bad faith in bringing the amendments, (2) allowing the amendments would be unduly prejudicial, and (3) the new claims are futile.  The Court addresses these arguments in turn and concludes that Plaintiff may proceed with his proposed second amended complaint.

**A.     Undue Delay**

Defendants first argue that Plaintiff unduly delayed in bringing the second amended complaint and has not explained why he waited almost two years to add class claims and additional parties.  Plaintiff explains in his reply brief that he learned that *he* had been held at Homan Square—and not at the Harris Street Police Station—through discovery; Plaintiff learned that others also were brought to Homan Square in an article published by *The Guardian* on February 24, 2015.  Plaintiff filed the instant motion to amend on April 24, 2015, after retaining new counsel.

Given this background, the Court cannot agree that Plaintiff unduly delayed in revising his allegations to reflect that he and others allegedly were held in violation of their constitutional rights at Homan Square.  Plaintiff explains that Homan Square is near the Harris Street Police Station, initially leading Plaintiff to believe that he was held at the Police Station.  Defendants do not offer any reason that Plaintiff should have been aware, prior to the publication of the *Guardian* article, of the Chicago police department's alleged use of Homan Square, generally.  Defendants even posit that Plaintiff learned of the Homan Square site from the February 2015 *Guardian* article.  As such, both sides seem to agree that Plaintiff only learned of all of the facts regarding the Homan Square facility in February of this year.  Filing his amended complaint two months later does not qualify as undue delay in these circumstances, particularly given that

Plaintiff retained new counsel around this time. See *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (affirming grant of leave to amend where delay was excused, in part, by the court having to recruit new counsel for plaintiff).

### B. Prejudice

Defendants also argue that leave to amend should be denied because they will be unduly prejudiced as additional discovery will be required on the new claims. Defendants stress that all of the discovery that has been conducted thus far has dealt with Plaintiff's individual claims and that the basis for Plaintiff's *Monell* claim—on which discovery has been stayed—differs significantly from what previously was alleged.

Although the addition of the class claims and the new plaintiffs certainly will broaden the nature of the litigation significantly, the Court is unconvinced that this provides a valid reason to deny leave to amend. Discovery has not progressed very far, as apparently, it was ongoing with respect to Plaintiff's individual claims as of July 15, 2015. See [119] (instructing parties to complete discovery on Plaintiff's individual claims). That discovery will be relevant to the amended allegations, as Plaintiff's individual claims are premised in large part on the same misconduct that he alleged in the original complaint. Plaintiff now alleges, however, that the misconduct that he endured took place at Homan Square. Finally, discovery has been stayed on Plaintiff's *Monell* claim. That the *Monell* discovery now will focus on the use of Homan Square to secretly detain people, and the conditions of confinement there, does not seem particularly prejudicial, as it appears that no discovery has been conducted on any policy and practice allegations thus far.

The Court last notes that seeking to add class claims does not in itself prohibit amendment. See, *e.g.*, *Arreola*, 546 F.3d at 795–96 (affirming district's court grant of leave to

file a second amended complaint that introduced class claims). Defendants assert that allowing Plaintiff to add class claims would be particularly inappropriate in this case because Plaintiff did not inform them of the possibility of class claims at the earliest possible date. Again, however, both parties seem to agree that Plaintiff only learned of alleged widespread abuses at Homan Square about two months before he filed the instant motion to amend.

For all of these reasons, the Court will not prohibit amendment on the basis of undue prejudice.

### C. Futility

Finally, Defendants argue that the new claims that Plaintiff seeks to add are futile. For the reasons explained below, the Court respectfully disagrees.

Defendants first argue that the claims of proposed plaintiffs Estephanie Martinez and Jose Martinez—which arise from alleged incidents in August 2006 and September 2011, respectively—are barred by the statute of limitations. In Illinois, there is a two-year statute of limitations for § 1983 claims and a one-year statute of limitations for state-law claims brought together with § 1983 claims. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Plaintiff concedes in his reply brief that the individual claims for excessive force, failure to intervene, and IIED (Counts III through V) are barred by the statute of limitations with respect to these two individuals. [117], Pl.'s Reply at 13. Plaintiff contends, however, that they may pursue the injunctive relief (although not the monetary relief) that is sought in Counts I and II. See *id.* See also *Lucas v. Williams*, 1995 WL 758167, at * 1 (N.D. Ill. Dec. 20, 1995) (holding that plaintiff's § 1983 claim survived to the extent that he sought injunctive relief for imminent constitutional violations, even though plaintiff was time-barred from seeking relief related to prior incarceration); but see *Gen. Auto Serv. Station v. City of Chicago*, 2004 WL 442636, at *7 (N.D.

7

Ill. Mar. 9, 2004) (Section 1983 claims "are best characterized as personal injury actions for statute of limitations purposes, even where such claims contemplate both legal and equitable relief" and applying statute of limitations where plaintiff sought injunctive relief on as-applied due process challenge to zoning ordinance).[2]

Defendants also argue that Plaintiff is barred from adding the claims of proposed plaintiffs Coffey and Berry—which arise from an incident in February 2015—because Plaintiff seeks to improperly join their claims. Rule 18 governs joinder of claims, and Rule 20 joinder of parties. The rules for joinder of claims only become relevant once the rules for joinder of parties have been satisfied. See *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 57 (7th Cir. 1982). As such, the Court first addresses whether Plaintiff may properly join Coffey and Berry as plaintiffs under Rule 20(a)(1), before turning to Rule 18.

Under Rule 20(a)(1), "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." See also *Lee v. Cook Cnty, Ill.*, 635 F.3d 969, 971 (7th Cir. 2011) ("Multiple plaintiffs are free to join their claims in a single suit when "*any* question of law or fact common to all plaintiffs will arise in the action.") (quoting Fed. R. Civ. P. 20(a)(1)(B)) (emphasis in original). The Court agrees with Plaintiff that Coffey and Berry meet the requirements of Rule 20(a)(1). In particular, they both allege that they were subject to the same unconstitutional policies or practices pursuant to which they were seized and

---

[2] Plaintiff clarified in his reply brief in support of his motion to amend that Estephanie and Jose Martinez seek only prospective relief, and not damages, in Counts I and II. As such, Defendants have not yet had an opportunity to provide their position as to whether they believe that the claims of the Martinez plaintiffs nonetheless are barred. Although the Court will allow Plaintiff to add Estephanie Martinez and Jose Martinez at this time with respect to the injunctive relief portions of the class claims, Defendants remain free to challenge hereafter the Martinez plaintiffs' claims in light of Plaintiff's new formulation of those claims.

taken to Homan Square in violation of their Fourth Amendment rights. They thus assert a right to relief arising from the same policy, practice, and conduct as Plaintiff and raise questions that are common to all of the proposed plaintiffs, such as whether failing to make public records of detentions is unconstitutional and whether the Chicago Police Department in fact has a policy of using facilities, other than police stations, to detain and interrogate citizens.

With respect to claim joinder, under Rule 18(a), "[a] party asserting a claim * * * may join, as independent or alternative claims, as many claims as it has against an opposing party." Defendants cite *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), in support of their argument that the claims of Berry and Coffey do not comply with this rule, because, according to Defendants, they seek to bring unrelated claims against unknown officers who may be different from the named defendant officers. In *George*, the Seventh Circuit observed that it was improper for a prisoner plaintiff to bring 50 distinct claims against 24 different defendants in one lawsuit in order to circumvent the rule that limits to three the number of frivolous suits that may be brought without prepaying the filing fee under the Prison Litigation Reform Act. See 507 F.3d at 607. In its discussion, the Seventh Circuit observed that "Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2," because "unrelated claims against different defendant belong in different suits." *Id.*

That is not the case here, as all of the claims in the proposed complaint concern alleged detentions, interrogations, and conditions at Homan Square. The claims are asserted against the City of Chicago (Counts I and II) and various Chicago police officers—some known and some unknown—all of whom allegedly were involved in the detentions at Homan Square (Counts III through V). For all of these reasons, the Court respectfully disagrees with Defendants' contention that Berry and Coffey are required to file separate lawsuits to pursue claims related to

9

their detentions at Homan Square by unknown officers not yet named in the complaint.

Finally, citing *Portis v. City of Chicago*, 613 F.3d 702 (7th Cir. 2010), Defendants argue that the class claims are futile because class certification will be inappropriate on Counts I and II, which allege § 1983 claims premised on violations of the Fourth Amendment. In *Portis*, the plaintiffs brought a class action against the City of Chicago and alleged that taking more than two hours to release detainees after a central booking number is generated is unreasonable under the Fourth Amendment. The Seventh Circuit decertified the class, finding that common questions did not predominate over individual questions, because "reasonableness is a standard rather than a rule, and because one detainee's circumstances differ[ed] from another's." 613 F.3d at 705. Although the Seventh Circuit's discussion in *Portis* ultimately may bear on whether Plaintiffs have established that class certification is appropriate on their claims, at the pleadings stage, they only are required to *allege* that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) & (3) are met. They need not establish or prove that class certification is proper. See *Arreola*, 546 F.3d at 796 (rejecting argument that class action allegations were too conclusory and failed to *establish* numerosity, because class action allegations are subject to the federal notice-pleading regime).

For all of these reasons, the Court cannot conclude at this time that allowing Plaintiff to amend his complaint would be futile.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for leave to file a second amended complaint is granted [106]. Defendant's motion to dismiss Count VII of Plaintiff's revised amended complaint [76] is stricken as moot, as Plaintiff no longer brings that claim.

Dated: September 2, 2015

_____
Robert M. Dow, Jr.
United States District Judge