**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGEL PEREZ, individually, | ) | |
| JUANITA BERRY and CALVIN COFFEY | ) | |
| on behalf of themselves and all other | ) | |
| persons similarly situated | ) | |
| | ) | |
| Plaintiffs, | ) | No. 13 C 4531 |
| | ) | |
| vs. | ) | Judge Dow |
| | ) | |
| CITY OF CHICAGO, | ) | |
| EDMUND ZABLOCKI, Star #7505 | ) | JURY DEMANDED |
| JOSEPH WAGNER, Star #9812 | ) | |
| HERBERT BENTANCOURT, Star # 16976 | ) | |
| MATTHEW CLINE, Star #265 | ) | |
| JOHN DOLAN, Star #7722 | ) | |
| JORGE L. LOPEZ, Star #20298 | ) | |
| SCOTT KRAVITZ, Star # 6554 | ) | |
| CARLOS IGLESIAS III, Star #7859 | ) | |
| Defendants. | ) | |

**COMPLAINT-CLASS ACTION**
**3rd AMENDED COMPLAINT**

Plaintiff Angel Perez, individually, and Plaintiffs Juanita Berry and Calvin Coffey, who bring this class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), (3) on behalf of those similarly situated, by and through their attorneys, and complaining of Defendants Jorge L. Lopez, Edmund Zablocki, Matthew P. Cline, Joseph Wagner, Herbert Betancourt, John P. Dolan, Scott Kravitz, Carlos Iglesias III, and the City of Chicago and states as follows:

**<u>JURISDICTION</u>**

1.      The jurisdiction of the court is invoked pursuant to the Civil Rights Act,   42 U.S.C.A. § 1983 (West) *et seq.* and 1988; the Judicial Code, 28 U.S.C.A. § 1331, and 1343(a) (West); the Constitution of the United States; and supplemental jurisdiction pursuant to 28

1

U.S.C.A. § 1367 (West).

## **PARTIES**

2.      Plaintiff, ANGEL PEREZ ("Perez"), is an adult male who, at all relevant times, was a resident of Chicago, Illinois, Cook County.

3.      Plaintiff, JUANITA BERRY ("Berry"), is an adult female who, at all relevant times, was a resident of Chicago, Illinois, Cook County.

4.      Plaintiff, CALVIN COFFEY ("Coffey"), is an adult male who, at all relevant times, was a resident of Chicago, Illinois, Cook County.

5.      Defendants, Jorge L. Lopez ("Lopez") Star No. 20298, Edmund Zablocki ("Zablocki") Star No. 7505, Matthew P. Cline ("Cline") Star No. 265, Joseph Wagner ("Wagner") Star No. 9812, Herbert Betancourt ("Betancourt") Star No. 16976, John P. Dolan ("Dolan") Star No.7722, Scott Kravitz ("Kravitz") Star No. 6554, Carlos Iglesias III ("Iglesias") Star No. 7859 ("Defendant Officers"), were at all relevant times, working as Chicago Police Officers, and were residents of Cook County, Illinois.

6.      At all relevant times, Defendant Officers, were acting in the course of their employment and under color of law.

7.      Defendant Officers are being sued in their individual capacities.

8.      Defendant, City of Chicago (the "City") is and was a municipality, at all relevant times, was the employer and principal of Defendant Officers who improperly detained, arrested and tortured the plaintiffs, and as such, is and was at all relevant times responsible for the supervision, training, policies, practices, and customs of the Chicago Police Department and its officers.

## FACTS

9.     Plaintiffs bring this action on behalf of themselves and Plaintiffs Coffey and Berry also bring this action on behalf of the Classes defined herein, to reform an unconstitutional police procedure which allows police offers to hold arrestees "incommunicado" or "off the grid," without processing the arrestees or making any public record of the arrest, for long periods of time in order to "squeeze" information out of the detainees.   This is often accomplished by holding and interrogating the arrestee at a facility other than a normal police station.   The arrestees are kept off the official booking databases, frequently beaten by police, shackled for prolonged periods of time, denied access to legal counsel, and are unable to be located by family or attorneys while being held.

10.     Many times, the arrestees are held and interrogated for long periods of time in order to investigate crimes totally unrelated to the initial detention.   The procedure allows police to investigate and interrogate citizens without taking them before a judicial official for a determination of probable cause, in order to justify the seizure or to use the person to form charges against someone else.

11.     In addition to causing unlawful detentions, during the time that the detainee is held at the facility, other than a normal police station, the detainee is subject to minimally appropriate conditions of confinement.

12.     While being held without being booked at a police station, arrestees are forced to (attempt to) sleep on small metal benches within the interrogation rooms.   They are frequently denied food, water and lavatories and forced to defecate themselves while being shackled to the wall.

13.      As a result, arrestees detained at these facilities are kept from disinterested judicial

officials and are isolated for long periods of time in interrogation rooms and deprived of necessary sleep while police continue to interrogate them and build evidence against them or others who they may be associated with; all raising the specter of torture, false confessions, and unlawful convictions.

14.     The practice and policy of the City of Chicago, through the Chicago Police Department ("CPD") in holding citizens at these facilities, involuntarily, *incommunicado*, without processing them, without reading them their *Miranda* rights, subjecting them to restraint of movement via handcuffs, leg shackles and/or locked rooms or cells of solitary confinement, denying them access to attorneys, denying them access to phones, bathrooms to relieve themselves, and keeping their whereabouts secret from friends, family and society at large for several hours to days at a time, is unconstitutional.

15.     As opposed to a regular police station, police use facilities like the police warehouse at the intersection of South Homan Street and West Fillmore Avenue ("Homan Square") to detain people without formal acknowledgement of the detention.  The privacy of these sites is conducive to physical or mental coercion and abuse.  Detainees are held until they "cooperate" with the corrupt police officers.  If a detainee does not cooperate, he will spend a considerable amount of time in a solitary confinement cell and eventually be placed under formal arrest and transferred to regular police stations. The corrupt officers who use these sites will manufacture the necessary probable cause to justify the formal arrests.

16.     Sites like Homan Square contain locked "interview" rooms, wretched from human waste and containing bars on which to handcuff citizens.  Once cuffed to the bars on the walls, the citizens are forced to stand for hours or even days on end.  Detainees are denied access to food, water and the use of bathroom facilities.  Forcing detainees to relieve themselves in their cells is

tortuous in itself, but the smell serves as compulsion to future detainees.

17.     Though they are not actual police stations, sites like Homan Square contain solitary confinement cells for holding detainees. Because of the difficulty in tracking detainees held at facilities like Homan Square, attorneys have no way of finding their clients while at these sites and there is no way to monitor the activity and interrogation tactics being used at these facilities.

18.     Officers from all over Chicago arrest citizens with or without probable cause and bring them to interrogation sites.

19.     A similar practice of Chicago Police Department was held unconstitutional by the Seventh Circuit in *Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006). There, officers would intentionally hold arrestees "past court call" in order to continue investigating and interrogating arrestees without taking them before a judicial official for a probable cause hearing within 48 hours. The use of the facilities like Homan Square is a continuation of this practice.

### Facts Related to Plaintiff Angel Perez

20.     On or about October 20, 2012 at approximately 5:00 p.m. Plaintiff Perez was working as a delivery driver for Castillo Delivery Service.

21.     At the aforementioned date and time, Plaintiff Perez was returning to Dosirak Restaurant at 1514 W. Taylor Street, Chicago, Illinois, following a delivery.

22.     As Plaintiff Perez traveled eastbound on Taylor Street near the intersection of Taylor and Ashland Streets, he was pulled over by an unmarked police car with flashing headlights.

23.     Two Chicago Police officers approached Plaintiff Perez's car, and did not identify themselves, but called each other George (Defendant Lopez) and John (Defendant Dolan).

24.     The officer who identified himself as John approached Plaintiff Perez's driver's side door, opened Plaintiff Perez's car door and pulled Plaintiff Perez out of his car.

25.     Defendant Lopez opened the passenger door and began searching Plaintiff Perez's car.

26.     Plaintiff Perez was handcuffed and placed into the unmarked police car.

27.     Defendant Dolan then drove Plaintiff Perez's car to Homan Square.

28.     Defendant Lopez followed in the unmarked car with Plaintiff Perez handcuffed in the back seat.

29.     While on the way to the police station, Plaintiff Perez asked that his lawyer be contacted.

30.     Upon arriving at the police station, Plaintiff Perez was searched in the parking lot. Plaintiff Perez was then brought into the Harrison Street Police Station through a back entrance, brought to a small room and handcuffed to a bar on the wall.

31.     Defendant Lopez took Plaintiff Perez's cellular telephone and left the room, leaving Officer Dolan in the room with Plaintiff Perez.

32.     Plaintiff Perez was not free to leave the police station as he was handcuffed to the wall the entire time he was in the police station.

33.     Defendant Lopez returned to the room and the two officers began bombarding Plaintiff Perez with questions regarding robberies and drug dealers in the Taylor Street area.

34.     Plaintiff Perez responded that he did not know anything about robberies or drug dealings in the Taylor Street area and again and repeatedly requested that the officers call his lawyer.

35.     Despite requests from Plaintiff Perez, Plaintiff Perez's lawyer was never contacted and the questioning continued.

36.     The officers were particularly interested in why Plaintiff Perez had the telephone

number of an individual by the name of "Dwayne" in his telephone.

37.     The interrogation of Plaintiff Perez continued for approximately one and a half to two hours.  At the end of the interrogation, the officers informed Plaintiff Perez that they were going to harass him every day on Taylor Street until they got what they wanted from him.

38.     Plaintiff Perez was un-handcuffed, given his car keys and told he could leave by Officer Dolan.

39.     On or about October 21, 2012, Defendant Lopez called Plaintiff Perez's cell phone and told Plaintiff Perez that what took place the night before was a mistake and that he needed Plaintiff Perez to sign some papers so that his car would not be towed.

40.     Defendant Lopez instructed the Plaintiff Perez to meet him at Al's Beef on Taylor Street at 3:00 p.m. that day.

41.     Plaintiff Perez went to Al's Beef at 3:00 p.m. and Defendant Lopez arrived in a police squad with Defendant Zablocki, who was tall, with red hair and a beard.

42.     The officers drove to the back of the parking lot and Plaintiff Perez followed them to that location.

43.     Defendant Edmund Zablocki exited the squad car and began to threaten Plaintiff Perez.  Then the officers searched Plaintiff Perez, handcuffed him with his hands behind his back, and placed him in the squad car.

44.     Plaintiff Perez was then taken to Homan Square.

45.     Plaintiff Perez was led to a second floor room in Homan Square with chairs and a table and handcuffed to a bar in the locked room.  Plaintiff Perez was also placed in leg shackles.

46.     Plaintiff Perez was held against his will in the locked room for several hours, handcuffed and shackled, and was not free to leave the custody of the Defendant Officers.

47.     Several officers (approximately six officers), who were later identified as Defendant Matthew P. Cline, Defendant Edmund Zablocki, Defendant Joseph Wagner, Defendant Herbert Betancourt, and Defendant John Dolan, entered the room. During the next several hours the named Defendants each took turns torturing and threatening Plaintiff Perez

48.     The named Defendants threatened that they would send Plaintiff Perez to Cook County Jail where he would be raped by gang members; that they would charge him in a conspiracy to obstruct justice; that they would plant evidence on Plaintiff Perez and his family members if he continued to refuse to assist them.

49.     Plaintiff Perez did not cooperate.

50.     One of the officers in the room identified himself as the "Commander."

51.     Defendant Officers ignored repeated requests by Plaintiff Perez to speak with his attorney.

52.     At no time did Defendant Officers read Plaintiff Perez his Miranda rights.

53.     The officers wanted Plaintiff Perez to call or text "Dwayne" and set-up a drug purchase, but he refused to call or text Dwayne.

54.     After a period of time refusing to call or text Dwayne, the officers began to pull and contort Plaintiff Perez's body while he was handcuffed to the wall and shackled at his ankles causing Plaintiff Perez severe pain.

55.     At one point, Defendant Zablocki sat on Plaintiff Perez's chest and placed his palms on Plaintiff Perez's eye sockets and pushed hard against them causing Plaintiff Perez severe pain. Defendant Zablocki also drove his elbows into Plaintiff Perez's back and head causing severe pain.

56.     Defendant Lopez was in the room at the time and did not intervene. All the defendant officers went in and out of the interrogation room yelling the named threats causing

Plaintiff Perez mental damage.

57.     In an attempt to contact the outside world, Plaintiff Perez  agreed to make the call and he attempted to call a friend of his to inform him what was transpiring at which time an officer took Plaintiff Perez 's telephone and ended the call.

58.     After several hours of verbal and physical torture, Defendant Lopez and an officer who claimed to be a police sergeant were alone in the room with Plaintiff Perez.

59.     Defendant Officers told Plaintiff Perez that if he refused to cooperate with them that they were going to give him a "little taste" of what he would be getting at the Cook County Jail.

60.     Defendant Officers put Plaintiff Perez over a chair and pulled down his pants, and Defendant Lopez said "I hear that a big black nigger dick feels like a gun up your ass."

61.     Defendant Lopez and/or Defendant Zablocki, knowing their actions created a strong likelihood of great bodily harm and mental anguish, inserted a cold metal object, believed to be one of officer's service revolvers, into Plaintiff Perez's rectum causing Plaintiff Perez severe pain and humiliation.  The two officers laughed hysterically while inserting the object into Plaintiff Perez's rectum.

62.     Defendant Zablocki then said "I almost blew your brains out." The officers told Plaintiff Perez that they would continue to insert the gun into his rectum until he cooperated with them.

63.     Plaintiff Perez began to cry and agreed to cooperate with the officers.

64.     Defendant officers then removed the leg shackles from Plaintiff Perez and took him from the room to a car waiting outside. Once in the car, the Plaintiff Perez was instructed, by the officers, to call Dwayne and set-up a purchase of either heroin or crack cocaine.   Plaintiff Perez

called Dwayne, but Dwayne did not answer the telephone. Plaintiff Perez was then instructed to text Dwayne, which he did and Dwayne then called Plaintiff Perez.

65.    Plaintiff Perez spoke to Dwayne about purchasing one gram of heroin and agreed to meet Dwayne at an agreed location and time. The police then brought Plaintiff Perez to his car, provided Plaintiff Perez with money to purchase the heroin, a box believed to be a GPS device and an audio recording device to record the transaction.

66.    Plaintiff Perez completed the purchase from Dwayne for the Chicago Police and returned the drugs and equipment to the police. The officers then wanted Plaintiff Perez to sell drugs to Dwayne. Plaintiff Perez told the officers that he would not be involved again with them.

67.    Plaintiff Perez was released from police custody at approximately 9:30 p.m. on October 21, 2012.

68.    Defendant Lopez subsequently repeatedly called Plaintiff Perez's cellular telephone from his cellular telephone requesting additional meetings with Plaintiff Perez. The Lopez calls stopped for a period after Plaintiff Perez contacted the Independent Police Review Authority for the Chicago Police Department and complained about the events of October 20, 2012 and October 21, 2012, in which the named Defendants arrested Plaintiff Perez, without probable cause, restrained and refused to release him from custody.

69.    At no time on either October 20, 2012 or October 21, 2012, prior to Plaintiff Perez's seizure and torture, did Plaintiff Perez commit a felony.

70.    Plaintiff Perez did not violate any felony immediately prior to or during the October 20, 2012 or October 21, 2012 stop and arrests.

71.    On October 20, 2012 and October 21, 2012, Defendants Lopez and Dolan did not have an arrest warrant to stop or detain Plaintiff Perez.

72.     Neither Defendant Lopez nor Defendant Dolan witnessed Plaintiff Perez violate any law within seven days prior to his October 20, 2012 stop and arrest.

73.     Defendant Officers did not have any legal justification to stop or detain Plaintiff Perez on either October 20, 2012 or October 21, 2012.

74.     Plaintiff Perez was held *incommunicado* and "off the grid" before being formally taken and processed at an area police station.

75.     Plaintiff Perez was detained for several hours without access to his attorney, family or friends.

76.     No public record of Plaintiff Perez' arrest was created within a reasonable time (an hour) of his detainment.

77.     Defendant officers did not have a warrant for Plaintiff Perez' arrest on October 20, 2012 or October 21, 2012.

### Facts Related to Plaintiff Calvin Coffey

78.     On February 6, 2015, after interrogating Plaintiff Coffey on the streets about narcotic activity, the police took Plaintiff Coffey to Homan Square in handcuffs.

79.     Plaintiff Coffey was taken to Homan Square in handcuffs by Defendant Iglesias and Defendant Kravitz.

80.     At Homan Square, Plaintiff Coffey was put in a locked room and handcuffed to a bar on the back wall.  Defendant Iglesias and Defendant Kravitz  wanted Coffey to "help" them.

81.     Coffey asked for his attorney on more than one occasion, but his requests were ignored.

82.     Defendant officers did not read Coffey his Miranda rights while at Homan Square.

83.     Coffey refused to cooperate with the officers. After several hours of refusing to cooperate with the officers, the officers stopped coming into the room.

84.     Plaintiff Coffey had to relieve himself while being handcuffed to the wall. Plaintiff Coffey called out for help for more than two hours to have someone escort him to the bathroom. Plaintiff Coffey's requests to use the lavatory were ignored. Plaintiff Coffey was forced to relieve himself on the floor of the interrogation room.

85.     Defendant Kravitz saw that Plaintiff Coffey had done a bowel movement and made Plaintiff Coffey clean it up with his skull cap.

86.     Because one of his hands was restrained, Plaintiff Coffey struggled to obey the command, and did so inadequately. Plaintiff Coffey was forced to endure the stench in the interview room for the remainder of his stay at Homan.

87.     Plaintiff Coffey was held at Homan Square for more than seven hours, without food, water, access to a lavatory or anywhere to sleep.

88.     Plaintiff Coffey was held *incommunicado* and "off the grid" before being formally taken and processed at an area police station.

89.     Defendant Officers did not have a warrant to arrest Plaintiff Coffey on February 6, 2015.

90.     No public record of Plaintiff Coffey's arrest was created within a reasonable time (e.g. an hour) of his arrest or detainment.

### *Facts Related to Plaintiff Juanita Berry*

91.     On February 6, 2015, Juanita Berry, was with Plaintiff Calvin Coffey on the streets (5th and Kostner), when police picked up Coffey for delivery of a controlled substance.

92.     Plaintiff Berry was handcuffed and taken, separate from Plaintiff Coffey, to Homan

Square.

93.     Plaintiff Berry was placed in a locked room, handcuffed to a ring or bar on the wall.

94.     Plaintiff Berry was not read her Miranda rights while at Homan Square.

95.     Defendants Kravitz and Iglesias, asked Plaintiff Berry to get them two guns from an acquaintance, or else they would charge her with aiding in the delivery of controlled substance of Calvin Coffey.

96.     Plaintiff Berry was not allowed to make a phone call or permitted to contact her attorneys, family or friends.

97.     Plaintiff Berry was held at Homan Square for 3-4 hours.

98.     After several hours, and many threats, Plaintiff Berry agreed to try to retrieve a gun.

99.     Defendant officers drove Plaintiff Berry to pick up a gun from an acquaintance.

100.    After retrieving the gun, the officers took her to Dunkin Donuts and later drove her home.

101.    Plaintiff Berry was never formally processed at an area police station or charged with any crimes.

102.    Plaintiff Berry was held *incommunicado* and "off the grid" before being formally taken and processed at an area police station.

103.    Plaintiff Berry was detained for several hours without access to her attorney, family or friends.

104.    No public record of Plaintiff Berry's arrest was created within a reasonable time (e.g. an hour) of her arrest or detainment.

**<u>COUNT I</u> – Class Claim**
**42 U.S.C. §1983 CLAIM FOR SECRET ARRESTS**
**(CITY OF CHICAGO)**

105.    Plaintiffs re-allege and reincorporate paragraphs 1- 104 and as if fully set forth herein.

106.    This Count is asserted by all Plaintiffs against Defendant City of Chicago.

107.    As described more fully above, Plaintiffs and the members of Classes have been held *incommunicado* and "off the grid" before being formally taken and processed at an area police station.

108.    The Constitutional violations described herein in this Complaint were effectuated by Defendant City of Chicago through its customs, practices, and policies (hereinafter referred to as the "City's Conduct").  The City's Conduct was the moving force behind the injuries sustained by Plaintiffs and Classes.

109.    Chicago police officers for years have arrested civilians without warrants and frequently without any probable cause and brought them to police sites other than police stations for the purpose of privately interrogating, threatening and beating them in order to coerce confessions or insider information.  Many times the civilians held at facilities like Homan Square are never booked, processed or charged with any crimes.

110.    Those taken to "off the books" locations are detained for long periods of time without food, water, or access to lavatories.

111.    Plaintiffs and the class members are denied contact with the attorneys and their family.

112.    Defendant City of Chicago's conduct, through the actions of its policy makers, was to train officers to seize, transport, and secretly detain citizens at facilities other than police stations for extended periods of time while handcuffed to a cell wall and to interrogate them when they had not been read their Miranda rights and to deny citizens access to attorneys;

14

attempt to coerce false confessions out of citizens; to deny them the ability to contact their families, to refuse access to restroom, food, or water; and to threaten citizens that they would be charged with crimes if they did not provide information.

113.    These policies and practices are unreasonable under the First and Fourth Amendments to the U.S. Constitution, and proximately caused Plaintiffs and the class members to suffer damages.

114.    Alternatively, the City of Chicago, although aware of the misconduct and violations, allowed the misconduct to continue to occur.

115.    The conduct alleged herein has gone unchecked and has been allowed to exist in the City of Chicago for a significant period of time, so much so, that police officers for the City of Chicago recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers for the CPD in order to permit said conduct to re-occur.

116.    These customs, as alleged herein, were maintained and implemented unreasonably by official policy makers of the Defendant City of Chicago, with deliberate indifference to an obvious need, and in a manner that shocks the conscience, and were the direct and proximate cause of the unconstitutional acts committed by Defendant Officers and the injuries suffered by Plaintiffs and the Classes.

## CLASS ACTION ALLEGATIONS

117.    Plaintiffs Coffey and Berry bring this action as a Class Action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), (3) on behalf of the following two proposed classes:

**Class I (Detainee and Arrestee Class):**    All natural persons detained or arrested by a Chicago Police Officer where no public record of the detainment or arrest was created within a reasonable amount of time from the initial detainment (Plaintiffs suggest one hour from the initial detainment) and where no court order existed at the time of arrest or detainment sealing or

otherwise making the detainment or arrest confidential, beginning on a date two years prior to the filing of this Complaint to the present.

**Class II (Future Detainees and Arrestees Class)**:  All persons who may in the future be subject to the secret arrests described in Class One.

118.    Plaintiffs Coffey, and Berry seek to represent both Class I and Class II of Count I.

119.    The individuals in Classes I and II are so numerous that joinder of all members is impractical.  Plaintiffs, based on the number of arrests made by CPD each year, estimate that the classes are at least in the thousands.  Based on the CPD 2010 annual report, there were 167,541 arrests that year.  Plaintiffs will obtain the exact number of class members during discovery.

120.    There are questions of law and fact common to the claims of Classes I and II. Among these common questions are:

a.    Whether the failure to make a public record of the detention and arrest of an individual within a reasonable time violates constitutional rights;

b.    Whether CPD policy and use of facilities other than police stations allows CPD to detain citizens for prolonged periods of time, incommunicado, as alleged herein;

c.    Whether there is a custom or practice within the CPD of misusing facilities like Homan Square as alleged herein;

d.    Whether the conditions of confinement in detention facilities like Homan Square deprive detainees of acceptable means of detention in an unconstitutional manner; and

e.    Whether the failure to make a public record of an arrest is unconstitutional as (i) restricting freedom of speech by preventing detainees from communicating with their lawyers and family, (ii) violating the Fourth Amendment, and (iii) Violating the right of habeas corpus.

121.    Plaintiffs Coffey and Berry will fairly and adequately represent the interests of the

class members. Plaintiffs do not have any claims which are antagonistic to the class members. Plaintiffs have retained skilled counsel with experience in class action litigation to represent the Classes.

122. Plaintiffs Coffey and Berry's claims are typical of the claims of the class members. Plaintiffs Coffey and Berry were detained at a facility other than a police station, without any public record of their detainment or arrest within an hour of the detainment, and prevented from communicating with attorneys, family members or others about their detainment and arrest.

123. A class action is a superior method of adjudicating this dispute. Individual cases are not economically feasible. Given the nature of the claims asserted, many of the class members will fear bringing claims on their own to assert their rights.

124. The Defendants have acted or refused to act on grounds generally applicable to Class II, thereby making appropriate declaratory and injunctive relief and monetary damages with respect to the class as a whole.

WHEREFORE, Plaintiffs and the Classes respectfully request that this Court enter judgment in their favor and against Defendant City of Chicago, and award them compensatory and punitive damages, costs and attorney's fees, and declaratory relief preventing future similar conduct, and any other relief that this Court deems just and equitable.

**COUNT II- Class Claim**
**42 U.S.C. §1983 CLAIM FOR DEPRIVATION OF ADEQUATE**
**ACCOMMODATIONS IN VIOLATION OF 4th AMENDMENT**
**(CITY OF CHICAGO)**

125. Plaintiff Coffey re-alleges and reincorporates paragraphs 1- 104 and as if fully set

forth herein.

126. This Count is asserted by Plaintiff Coffey against Defendant City of Chicago.

127. As described more fully above, Plaintiff Coffey and the members of the class have been detained in CPD facilities overnight and have not been furnished minimally adequate accommodations for sleeping and access to lavatories in a manner that violated their constitutional rights.

128. Defendant City of Chicago caused this deprivation of rights and is liable for Plaintiff's and the class members' damages, because the city maintains unconstitutional policies, customs and widespread practices that caused these violations. Moreover, the City of Chicago fails to adequately train and discipline its officers in a manner that causes such violations.

129. These policies and practices are unreasonable under the Fourth Amendment to the U.S. Constitution, and proximately caused Plaintiff and the class members to suffer damages.

130. Alternatively, the City of Chicago, although aware of the misconduct and violations, allowed the misconduct to continue to occur.

131. The conduct alleged herein has gone unchecked and has been allowed to exist in the City of Chicago for a significant period of time, so much so, that police officers for the City of Chicago recognize that they will not be punished for committing said acts and that, in fact, said acts are either permitted or quietly consented to by superior officers for the CPD in order to permit said conduct to re-occur.

132. These customs, as alleged herein, were maintained and implemented unreasonably by official policy makers of the Defendant City of Chicago, with deliberate indifference to an obvious need, and in a manner that shocks the conscience, and were the direct and proximate cause of the unconstitutional acts committed by Defendant Officers and the

injuries suffered by Plaintiff and the Classes.

## CLASS ACTION ALLEGATIONS

133.    Plaintiff Coffey brings this action as a Class Action pursuant to Fed. R. Civ. P. 23(a)

and 23(b)(2), (3) on behalf of the following Class:

**Class III (Accommodations Class):**  All nature persons detained or arrested by a
Chicago Police Officer where no public record of the detainment or arrest was created within a
reasonable amount of time from the initial detainment (Plaintiffs suggest one hour from the
initial detainment) and where no court order existed at the time of arrest or detainment sealing or
otherwise making the detainment or arrest confidential, and where the person was detained
between the hours of 10 p.m. and 6 a.m., beginning on a date two years prior to the filing of this
Complaint to the present.

**Class IV (Future Accommodations Class)**:  All persons who may in the future be
subject to the overnight accommodations described in Class Three.

134.    Plaintiff Coffey seeks to represent both Class III and Class IV of Count II.

135.    The individuals in Classes III and IV are so numerous that joinder of all members

is impractical.  Plaintiff, based on the number of arrests made by CPD each year, estimates that

the classes are at least in the thousands.  Based on the CPD 2010 annual report, there were

167,541 arrests that year.  Plaintiff will obtain the exact number of class members during

discovery.

136.    There are questions of law and fact common to the claims of Classes III and IV.

Among these common questions are:

a.    Whether the failure to make a public record of the detention and arrest of

an individual within a reasonable time violates constitutional rights;

b.    Whether CPD policy and use of facilities other than police stations allows

CPD to detain citizens for prolonged periods of time, incommunicado, and without access to

proper accommodations as alleged herein;

c.    Whether there is a custom or practice within the CPD of misusing

facilities like Homan Square as alleged herein; and

        d.     Whether to conditions of confinement in detention facilities like Homan Square deprive detainees of acceptable means of detention in an unconstitutional manner.

137.    Plaintiff Coffey will fairly and adequately represent the interests of the class members.  Plaintiff Coffey does not have any claims which are antagonistic to the class members.  Plaintiffs Coffey has retained skilled counsel with experience in class action litigation to represent the Classes.

138.    Plaintiff's claims are typical of the claims of the class members.  Plaintiff Coffey was detained at Homan Square and as a result was denied adequate facilities such as lavatories and sleeping accommodations.

139.    A class action is a superior method of adjudicating this dispute.  Individual cases are not economically feasible.  Given the nature of the claims asserted, many of the class members will fear bringing claims on their own to assert their rights.

WHEREFORE, Plaintiff Coffey and Class III and IV respectfully request that this Court enter judgment in their favor and against Defendant City of Chicago, and award them compensatory and punitive damages, costs and attorney's fees, and declaratory relief preventing future similar conduct, and any other relief that this Court deems just and equitable.

<u>**COUNT III**</u>**- Claims of Individual Plaintiffs Perez and Coffey**
**42 U.S.C. §1983 CLAIM FOR EXCESSIVE FORCE IN VIOLATION OF THE 4th**
**AMENDMENT**
**(Defendant Officers)**

140.    Plaintiffs Perez and Coffey re-allege and reincorporate paragraphs 1- 104 as if fully set forth herein.

141.    This claim is being brought on behalf of individual Plaintiffs, Perez and Coffey,

and against Defendant Officers.

142. The actions of Defendant Officers violated Plaintiffs' Fourth Amendment right to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiffs Perez and Coffey respectfully request that this Court enter judgment in their favor and against Defendant Officers, and award them compensatory and punitive damages, costs and attorney's fees, and any other relief that this Court deems just and equitable.

**COUNT IV- Claims of Individual Plaintiffs Perez and Coffey**
**42 U.S.C. §1983 CLAIM FOR FAILURE TO INTERVENE IN VIOLATION OF**
**THE 4th AMENDMENT**
**(Defendant Officers)**

143. Plaintiffs Perez and Coffey re-allege and reincorporate paragraphs 1- 104 as if fully set forth herein.

144. This claim is being brought on behalf of individual Plaintiffs, Perez and Coffey, against Defendant Officers.

145. Defendant Officers present for the physical abuse of Plaintiffs had the opportunity, but failed to intervene and prevent such abuse.

146. The actions of Defendant Officers violated Plaintiffs' Fourth Amendment right to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiffs Perez and Coffey respectfully request that this Court enter judgment in their favor and against Defendant Officers, and award them compensatory and punitive damages, costs and attorney's fees, and any other relief that this Court deems just and equitable.

**COUNT V- Claims of Individual Plaintiffs Perez and Coffey**
**STATE LAW - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST**

**(Defendant Officers)**

147.     Plaintiffs Perez and Coffey re-allege and reincorporate paragraphs 1- 104 as if fully set forth herein.

148.     This claim is being brought on behalf of individual Plaintiffs, Perez and Coffey, against Defendant Officers.

149.     The actions of the individual defendants as set forth above placed Plaintiffs in fear of their life, safety and in fear of receiving an assault and battery.

150.     The actions of the defendants constituted extreme and outrageous conduct, and were done deliberately and intentionally and in a willful and wanton manner.

151.     The Defendants intended that their conduct inflict severe emotional distress and/or knew there was a high probability that their conduct would cause severe emotional distress.

152.     The conduct of the defendants did in fact cause Plaintiffs to suffer severe emotional distress.

WHEREFORE, Plaintiffs Perez and Coffey respectfully request that this Court enter judgment in their favor and against Defendant Officers, and award them compensatory and punitive damages, costs and attorney's fees, and any other relief that this Court deems just and equitable.

**COUNT VI- Claims of Individual Plaintiffs Perez, Coffey, and Berry
INDEMNIFICATION CLAIM PURSUANT TO 745 ILCS 10/9-102
(City of Chicago)**

153.     Plaintiffs Perez and Coffey re-allege and reincorporate paragraphs 1- 104 as if fully set forth herein.

154.     This claim is being brought on behalf of individual Plaintiffs Perez and Coffey

against Defendant City of Chicago.

155.     The acts of the Defendant Officers described herein were willful and wanton, and committed within the scope of their employment.

156.     Pursuant to 745 ILCS 10/9-102, Defendant City of Chicago is liable for any judgment in this case arising from the actions of the Defendant Officers.

WHEREFORE, Plaintiffs Perez and Coffey respectfully request that this Court order Defendant City of Chicago to indemnify Defendant Officers for any judgment entered in this case arising from the actions of Defendant Officers.

## JURY DEMAND

Plaintiffs demand trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman
One of Plaintiffs' Attorneys



Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
*Attorneys for Plaintiffs Coffey and Berry and the Putative Class*

Law Offices of Scott T. Kamin
53 W. Jackson Blvd., Suite 430
Chicago IL 60604
(312) 322-0077
*Attorney for All Plaintiffs and the Putative Class*

Law Office of Jason Epstein
190 S. LaSalle St., Suite 2100
Chicago IL 60604
(312) 869-2603
***Attorney for All Plaintiffs and the Putative Class***

<u>**CERTIFICATE OF SERVICE**</u>

I, Cassandra P. Miller, certify that on February 1, 2017, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following:

**Jorge V. Cazares**
**Jonathan Booker Cifonelli**
**Walter Jones, Jr.**
**Khara Coleman**
Pugh, Jones & Johnson, P.C.
180 N. LaSalle Street
Suite 3400
Chicago, IL 60601
jcazares@pjjlaw.com
jcifonelli@pjjlaw.com
wjones@pjjlaw.com
kcoleman@pjjlaw.com

<u>s/ Cassandra P. Miller</u>
Cassandra P. Miller

Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark St., Ste. 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)