| | |
|---|---|
| ATHERIS MANN, ET AL., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, ET AL., <br><br> Defendants. | No. 15 CV 9197 <br><br> Magistrate Judge Mary M. Rowland |
| ANGEL PEREZ, ET AL., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, ET AL., <br><br> Defendants. | No. 13 CV 4531 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Compel Defendant City of Chicago to Include Certain Custodians from the Mayor's Office ("Motion") which seeks to compel the City to include Mayor Rahm Emanuel and ten members of his staff as custodians in the City's email search. For the reasons set forth below, Plaintiffs' Motion (Dkt. 68) is GRANTED IN PART and DENIED IN PART.

# I. BACKGROUND

In *Mann v. City of Chicago et al*, 15 C 9197 ("*Mann*"), Plaintiffs sued Chicago police officers and the City of Chicago ("the City") alleging that Defendants wrongfully arrested, detained, and prosecuted them and that they were abused at the Chicago Police Department's ("CPD") "off the books" detention center located at the intersection of South Homan Street and West Filmore Avenue in Chicago ("Homan Square"). In *Perez v. City of Chicago et al,* 13 C 4531 ("*Perez*"), plaintiffs bring a class action lawsuit against Chicago police officers and the City alleging that they and the members of the proposed class were subject to unconstitutional police practices at "off the grid" facilities such as Homan Square, where they were arrested, abused and detained without a record of their arrest or access to counsel.

The *Mann* and *Perez* cases were consolidated for pretrial proceedings. (*see Perez*, Dkt. 178; *Mann*, Dkt. 48). This Court denied the City's motion to bifurcate *Monell* discovery, stating:

> this is not a run-of-the-mill Monell claim based on excessive force or wrongful arrest. The allegation here is that the City sanctioned the use of a facility, not a police station, to detain suspects without charges and without access to counsel or families, used coercive tactics during interrogations, and sanctioned a code of silence…The fact that the facility was not a police station, and was unknown to the public, potential counsel and families of those detained, raises a number of discovery questions as to the policies that governed that facility, what level of command authorized and knew about the facility, and the command structure of the facility. While these are currently contained in the Monell count, questions about the authority of the individual officers to detain the individual plaintiffs at Homan Square would be fair discovery even absent the Monell claim. (*Mann*, Dkt. 60).[1]

---

[1] This Court denied the City's motion to bifurcate discovery in the *Mann* case. The City did not move to bifurcate in the *Perez* case. (*Mann*, Dkt. 60).

To streamline discovery, the parties in both cases are working jointly to conduct *Monell* discovery and have agreed on search terms and the majority of custodians. The Court appreciates these efforts. The parties also agree that electronic discovery will include the Mayor's Office, but reached an impasse on which custodians in the Mayor's Office should be searched. (Dkt. 68 at 3). Plaintiffs argue Mayor Emanuel and ten members of his senior staff, including current and former chiefs of staff and communications directors are relevant to Plaintiffs' *Monell* claim. (*Id*. at 5).[2] The City responds that Plaintiffs' request is burdensome, and that Plaintiffs have failed to provide any grounds to believe that the proposed custodians were involved with CPD's policies and practices at Homan Square. (Dkt. 74 at 1, 6). The City proposes instead that it search the two members of the Mayor's staff responsible for liasoning with the CPD and leave "the door open for additional custodians" depending on the results of that search. (*Id*. at 2, 4).[3]

---

[2] There is no dispute that communications within and between the Mayor's Office and other City agencies has been requested by Plaintiffs. *See* Plaintiffs' Document Request Nos. 14 & 24. (Dkt. 68-1 at 3–4).

[3] Although Plaintiffs' motion refers to its request for documents from Corporation Counsel's Office and the Police Superintendent, it appears either that the issue was resolved between the parties or that those specific documents are not the subject of the present motion to compel. (Dkt. 68 at 4). The Court also notes that the City refers to the emails containing "privileged information" but otherwise does not make any argument based on privilege in its Response. (Dkt. 74 at 5). The City, of course, will be able to claim privilege if appropriate and provide a proper privilege log.

## II. DISCUSSION

**A. Applicable Law**

District courts have broad discretion in supervising discovery and ruling on discovery motions. *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 636 (7th Cir. 2012). The court "may grant or deny the motion [to compel] in whole or in part, and…may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Airlines*, 95 F.3d 492, 496 (7th Cir. 1996) (*citing* Fed. R. Civ. P. 37(a)(4)(B), (C)). Under Federal Rule of Civil Procedure 26, a court should consider the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information and their resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit in determining whether to compel production. Fed. R. Civ. Pro. 26(b)(1). With regard to electronically stored information, if a party claims that such discovery from certain sources would be unduly burdensome or costly, that party must show that the information is not reasonably accessible because of undue burden or cost. Fed. R. Civ. Pro. 26(b)(2)(B).

Although "the burden is upon the objecting party to show why a discovery request is improper" (*Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)), relevance remains a "precondition" to discovery. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014); *see also Kleen Prods. LLC v. Packaging Corp. of Am., No.* 10 C 5711, 2012 U.S. Dist. LEXIS 139632, at *46

(N.D. Ill. Sep. 28, 2012) ("The selection of custodians must be designed to respond fully to document requests and to produce responsive, nonduplicative documents during the relevant period.").

**B. Relevance of the Discovery**

Plaintiffs in both cases seek to hold the City liable under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978) ("*Monell*"). It is well-settled that *Monell* liability arises "if, among other things: (1) [the municipality] has a permanent and well-settled municipal custom or practice that, although not authorized by official law or policy, was the moving force behind the plaintiff's constitutional injury; or (2) an individual with final policy-making authority for the municipality (on the subject in question) caused the constitutional deprivation." *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). Plaintiffs argue that communications within, from, and to the Mayor's Office regarding Homan Square are relevant to notice, ratification, cover-up and deliberate indifference under *Monell*. (*Mann*, Dkt. 68 at 5, Dkt. 75 at 4). In light of the allegations in the complaints, the Court agrees that these communications are relevant for purposes of discovery.

The *Mann* complaint alleges that in 2013, the Plaintiffs were falsely arrested and detained at Homan Square and in 2015, after spending approximately 15 months in Cook County Jail, a judge found them not guilty. (Am. Compl. Dkt. 50, ¶¶ 13–16, 20-24, 66–67, 96). As to the City, the complaint claims that it "is responsible for the policies, practices and customs of the Chicago Police Department that are alleged herein" and that the unconstitutional actions of defendant police officers

"were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of [the City], acting through and by its Police Department, Police Superintendents, Police Board, Mayors, and City Council." (*Id.*, ¶¶ 10, 88). These alleged policies include maintaining an "off the books" police detention center at Homan Square, using unconstitutionally coercive interrogation tactics and manufactured evidence against persons detained at Homan Square, the police code of silence, and the failure to properly train, discipline, and supervise police officers. (*Id.* at ¶ 89).

The *Perez* complaint alleges that Plaintiffs were arrested and detained at Homan Square in 2012 and 2015, and proposes to represent a class of people arrested or detained without a court order. (Third Am. Compl. Dkt. 202, ¶¶ 20, 44, 78, 91–92, 117). Plaintiffs assert that the unconstitutional violations described in the complaint "were effectuated by Defendant City of Chicago through its customs, practices, and policies." (*Id.*, ¶ 108). The complaint alleges that the City's practice and policy through the CPD "in holding citizens at these ['off the books'] facilities, involuntarily, *incommunicado,* without processing them, without reading them their *Miranda* rights…is unconstitutional" and the City's conduct "through the actions of its policy makers, was to train officers to seize, transport, and secretly detain citizens at facilities other than police stations for extended periods of time," where they interrogated them, denied them access to attorneys, refused access to food, water, and restrooms, attempted to coerce false confessions, and threatened them if they did not provide information. (*Id.*, ¶¶ 14, 112).

### C. Defendant's Arguments

#### *1. Factual Basis*

The City argues that Plaintiffs' request for additional custodians lacks a "factual basis." The City takes issue with Plaintiffs' assertion that the Mayor is a "policymaker" for the City. The City asserts that Plaintiffs "do not contend that the Mayor or his aides created or influenced any CPD policies at Homan Square" and Plaintiffs' only attempt to link the Mayor to Homan Square is a "double hearsay statement" in an April 2015 *Guardian* article which the Plaintiffs have "no evidence to support." These arguments impose too high a burden on Plaintiffs.

On summary judgment or at trial, Plaintiffs will have to provide evidence that "the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision" or that a policymaking official responsible for final government policy on the police practices at issue directed the particular conduct that caused Plaintiffs' harm. *See Valentino,* 575 F.3d at 675–76 (internal citations and quotations omitted). But at this stage Plaintiffs do not have to establish that the Mayor was a policymaker or had final authority on the police practices at issue or that there is a "nexus" between the custodians of the emails and CPD's alleged activities at Homan Square. (Dkt. 74 at 2). Said another way, Plaintiffs do not have to provide evidence of the Mayor's connection to Homan Square in order to get discovery potentially showing (or not) the Mayor's or his staffs' connection to Homan Square.

The City's reliance on *Vodak v. City of Chi.*, 639 F.3d 738 (7th Cir. 2011) and *Valentino*, 575 F.3d 664 is not persuasive. In both *Vodak* and *Valentino*, the Seventh Circuit Court of Appeals was tasked with determining, post summary judgment determinations, whether a particular official was a final policymaker for *Monell* liability purposes. In *Valentino*, the Seventh Circuit concluded that the evidence showed that the Mayor of the Village of South Chicago Heights was the final policymaker for the Village with regard to personnel decisions. 575 F.3d at 677–78. In *Vodak*, the Seventh Circuit found that the City of Chicago's Superintendent of Police was the final policymaker with regard to demonstrations and mass arrests. 639 F.3d at 747–50.

Plaintiffs respond that whether the Mayor is the "final" policymaker under *Monell* in this case does not matter at this stage. (Dkt. 75 at 4). The Court agrees. At this point, the Court is only concerned with the propriety and scope of discovery. So Plaintiffs' theory may be that the Mayor was the final policymaker for the City with regard to police practices at Homan Square or that the City's well-settled custom or practice was the moving force behind Plaintiffs' injury. Either is a viable theory under *Monell* and discussions internal to the Mayor's office about Homan Square would be relevant to those theories. *See Valentino*, 575 F.3d at 675–76 (addressing plaintiff's two theories of *Monell* liability on summary judgment); *see also LaPorta v. City of Chi.*, No. 14 C 9665, 2016 U.S. Dist. LEXIS 111297, at \*5–6 (N.D. Ill. Aug. 22, 2016) ("[T]he Court does not intend to say that Emanuel is the final policymaker for *Monell* purposes; that issue is beside the point, because

LaPorta need not identify an individual with 'final policymaking authority' to succeed on his *Monell* claim.") and *Marcavage v. City of Chi.*, 467 F. Supp. 2d 823, 830 (N.D. Ill. 2006) ("this Court simply cannot say without further development of the record that Mayor Daley does not make official policy in Chicago…as to police enforcement…that could run afoul of plaintiffs' constitutionally protected rights.").

The City also relies on *LaPorta*, 2016 U.S. Dist. LEXIS 111297, in which plaintiffs claimed the City had a practice of condoning a code of silence in the CPD. The *LaPorta* court denied plaintiff's motion to compel the Mayor's deposition. Relying on *Olivieri v. Rodriguez*, 122 F.3d 406, 409–10 (7th Cir. 1997), which stated that public officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence," the court concluded that plaintiff failed to show that the information sought in the deposition was unavailable by other means particularly since plaintiff had not served interrogatories on the Mayor. *LaPorta,* 2016 U.S. Dist. LEXIS 111297 at *6–7. In light of the Mayor's "unique position," the court declined to compel the Mayor's deposition. This case is does not help the City here since Plaintiffs seek to have emails searched, not to take the Mayor or his staff away from their duties by taking their depositions. *See Stagman v. Ryan*, 176 F.3d 986, 994 (7th Cir. 1999) ("depositions of public officials create unique concerns.").

The City is correct that the court in *LaPorta* questioned plaintiff's need for more information beyond what the Mayor stated publicly about the police code of silence.

But the Mayor's public statements in that case were "relevant proof" of plaintiff's claim and the court wondered what more plaintiff needed. *LaPorta,* 2016 U.S. Dist. LEXIS 111297 at *4, 6. By contrast, here Plaintiffs argue that the Mayor has not made public statements about Homan Square with the exception of the Mayor's public response to a question about it, that everything is "done by the books," which contradicts the allegations in the *Mann* and *Perez* complaints. Plaintiffs are entitled to discover, among other things, whether the Mayor or his high ranking staff made non-public statements or were involved in non-public communications about Homan Square. *See Marcavage,* 467 F. Supp. 2d at 830 ("Plaintiffs are entitled to the opportunity, through discovery, to develop the facts that can show the existence of the policies that they allege are actionable under *Monell*.").[4]

Finally, the City has agreed to search Janey Rountree's and Felicia Davis's emails because they served as the Mayor's Office liasons with the CPD since 2011. (Dkt. 74 at 1–2). While the Court appreciates the City's agreement to search these two custodians, this position undercuts the City's contention that other custodians should not be searched because Plaintiffs have not shown a link between the Mayor's Office and Homan Square. (Dkt 74 at 6). The Court understands that the City identified Ms. Rountree and Ms. Davis as the most likely holders of responsive emails. (*Id*. at 5). But in light of the allegations in the complaint, the Mayor and his upper level staff also might have responsive emails. Of course, it is possible that the

---

[4] With regard to Plaintiffs' reliance on an April 2015 *Guardian* article to argue that the Mayor may have responsive documents, the Court is not relying on this document to reach its conclusion. To be clear, the Court is relying on the allegations in the Complaints to find that the discovery sought is relevant—not an article posted on the internet.

search, which is already limited by the agreed upon terms, will turn up few responsive emails regardless of which custodian in the Mayor's Office is searched. But limiting the search to Rountree and Davis (as the City proposes) may not capture many responsive documents since it is possible that the Mayor or his upper level staff communicated about Homan Square internally and did not include Rountree, Davis, or the CPD in these communications.[5]

### *2. Burden on the City*

The City argues that it will be "burdened with the time and expense of searching the email boxes of nine (9) additional custodians." (Dkt. 74 at 5). The City does not offer any specifics or even a rough estimate about the burden. *See Kleen Prods. LLC* 2012 U.S. Dist. LEXIS 139632, at *48 ("[A] party must articulate and provide evidence of its burden. While a discovery request can be denied if the 'burden or expense of the proposed discovery outweighs its likely benefit,' Fed. R. Civ. P. 26(b)(2)(C)(iii), a party objecting to discovery must specifically demonstrate how the request is burdensome.") (internal citations and quotations omitted). As the Seventh Circuit stated in *Heraeus Kulzer, GmbH, v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011):

> [The party] could have given the district court an estimate of the number of documents that it would be required to provide Heraeus in order to comply with the request, the number of hours of work by lawyers and paralegals required, and the expense. A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery…Rough estimates would have sufficed; none, rough or polished, was offered.

---

[5] Both parties discuss the Laquan McDonald emails that Plaintiffs attached to their Reply. The Court does not find these emails to be relevant or persuasive in deciding this motion.

The City argues in its sur-reply that it is impossible to determine how many emails there may be "unless the City actually runs the searches and collects the material." (Dkt. 78-1 at 4). Still, the City should have provided an *estimate* of the burden. The Court is not convinced by the City's argument about the burden. In addition, other Rule 26 factors—the importance of the issues and of the discovery in resolving the issues, and the parties' relative access to information and their resources—weigh in favor of allowing discovery of more than just the two custodians proposed by the City. The *Monell* issues are important to the issues at stake in both *Mann* and *Perez*. And only the City has access to this information. However, searching all of the custodians proposed by Plaintiffs is not proportional to the needs of the case.

The Court is mindful that every additional custodian increases the risk of duplication of emails and the time and resources necessary to review emails. Therefore, the Court will not require the City to search the following emails because of the short tenure of the staff person or the time during which the person held the position: Forest Claypool, Adam Collins, Joan Coogan and Eileen Mitchell.

**D. Summary**

The City has agreed to search Ms. Rountree's and Ms. Davis's emails. The Court orders the City to also include Mayor Rahm Emanuel, Joe Deal (limited to the time

period that he served as either Deputy Chief of Staff or Chief of Staff), Kelly Quinn, Lisa Schrader, and Shannon Breymaier[6] as custodians in the City's search.

Plaintiffs' request for sanctions (Dkt. 68 at 7) is denied. Plaintiffs' motion to compel is being granted only in part. The Court does not view the City's conduct as sanctionable and both parties' diligent efforts to work together shows that "other circumstances make an award of expenses unjust." Fed. R. Civ. Pro. 37(a)(5)(A)(iii).

### III. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Compel Defendant City of Chicago to Include Certain Custodians in Their Email Search [68] is GRANTED IN PART and DENIED IN PART.

E N T E R:

Dated: September 8, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

[6] To the extent any of the latter three individuals held other posts at the City of Chicago, not in the Mayor's Office, during the relevant time period, the City can exclude that timeframe from their search.