IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGEL PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13-cv-04531 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | Judge Robert M. Dow, Jr. |
| EDMUND ZABLOCKI, | ) | |
| MATTHEW CLINE, & | ) | Magistrate Judge Jeffrey I. Cummings |
| JORGE L. LOPEZ, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angel Perez alleges claims under 42 U.S.C. §1983 for excessive force, failure to intervene, and intentional infliction of emotional distress against the City of Chicago and three of its officers. Before the Court is defendants' motion to compel the United States Attorney's Office for the Northern District of Illinois ("USAO") to comply with a subpoena seeking Title III wiretap recordings of calls between Perez and a third-party, Dwayne Payne. (Dckt. #416). For the reasons stated below, the Court denies defendants' motion.[1]

**I.  BACKGROUND**

    **A.  Underlying facts**

In October 2012, defendants Edmund Zablocki, Matthew Kline, and Jorge L. Lopez were serving as officers on the Gang Investigations Section team ("Gang Team") of the Chicago Police Department. At the time, the Gang Team was conducting a joint investigation with the

---

[1] The USAO has filed a motion for leave to file a sur-reply (Dckt. #429) and defendants, in turn, have filed a motion for leave to file a sur-sur-reply (Dckt. #430). The Court has considered these additional briefs and it grants the parties' motions for leave to file them *instanter*.

1

USAO of Dwayne Payne, a suspected drug dealer. As part of the investigation, the USAO obtained a Title III wiretap of Payne's cell phone.

According to defendants, the Gang Team was monitoring Payne on October 20, 2012, when he received four calls from Perez. Shortly thereafter, the Gang Team observed Perez purchasing drugs from Payne. Officers – including defendant Lopez – stopped Perez's car as he left the scene. They recovered the drugs, drove Perez to the 11th District police station, and asked him to cooperate in their investigation of Payne. Defendants allege that Perez agreed to cooperate and was released without being charged with a crime. The next day, defendants Lopez and Zablocki arranged to meet Perez in a restaurant parking lot. When Perez arrived, they escorted him to Homan Square, a law enforcement facility. There, they instructed Perez to call Payne and arrange a drug buy. Zablocki then gave Perez money, a GPS tracker, and a recording device. While Perez was driving to purchase the drugs, defendants allege that he made four additional calls to Payne. Members of the Gang Team watched as Perez purchased heroin from Payne. (Dckt. #416 at 2).

Perez's account of events differs sharply from that of the defendants. He first asserts that he was not buying drugs when officers arrested him. Instead, he alleges that he was working as a delivery driver for Castillo Delivery Service at the time when Lopez and another officer pulled him over, arrested him, and searched his car without cause. (Dckt. #202 at 5). He was then taken to the police station, handcuffed to a wall, and questioned about robberies and drug dealers for more than ninety minutes without an attorney present. The officers were particularly interested in why Perez had the number of an individual named "Dwayne" (Payne's first name) in his cell phone. They allegedly told Perez that "they were going to harass him every day . . . until they got what they wanted from him." (*Id.* at 7). Perez maintained that he had no

2

knowledge of robberies or drug dealers, and the officers eventually released him. The next day, Lopez called Perez and said that Perez needed to "sign some papers so that his car would not be towed." (*Id.*). When Perez arrived, however, he was again searched, handcuffed, and taken to Homan Square. Perez alleges that he was held for several hours in an interrogation room, where he was threatened and brutally tortured. Only then did Perez agree to cooperate with the officers' investigation. After purchasing drugs from Payne under officer surveillance, Perez told the officers that he would no longer cooperate with their investigation. He was then released from police custody. Perez filed the instant action alleging claims under 42 U.S.C. §1983 on June 20, 2013.

    **B.**    **Discovery**

Fact discovery in this case closed on February 28, 2019. On October 26, 2020, defendants filed a motion to reopen discovery so that they could obtain the Title III recordings of conversations between Payne and Perez. (Dckt. #359). Defendants claim the recordings will "provide information about the relationship between [Perez] and Payne," and "[t]he words, tone and demeanor of [Perez] on the recordings could reveal if [Perez] was in fact tortured." (Dckt. #416 at 5). In their motion to reopen, defendants represented that an Assistant United States Attorney informed them that they could access the Title III recordings "because the criminal case against Payne had concluded" and that she would "file an 'expansion order' to allow the recordings to be turned over to the parties" once discovery was reopened. (Dckt. #370 at ¶25).

After the Court granted the motion to reopen, (Dckt. #394), defendants issued a subpoena to the USAO seeking all Title III recordings of conversations between Payne and Perez. (Dckt. #416-1 at 5). Rather than filing an "expansion order," however, the USAO responded that it did not have authority to release Title III information "at this time," but was "prepared to cooperate

3

with [defendants] in securing authorization from the chief judge for disclosure of such material pursuant to 18 U.S.C. §2517 while [defendant] officers give testimony at trial in the above case." (Dckt. #416-3 at 2). Defendants filed the instant motion to compel on February 16, 2022, asking that the Court order the USAO to comply with the subpoena within thirty days, rather than at trial. (Dckt. #416).

## II.  ANALYSIS

Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968 in an effort to "provide law enforcement officials with some of the tools thought necessary to combat crime without unnecessarily infringing upon the right of individual privacy." *Scott v. United States*, 436 U.S. 128, 130 (1978). Section 2517 of Title III lists three specific circumstances under which evidence lawfully obtained under Title III may be disclosed:

> (1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.
>
> (2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.
>
> (3) Any person who has received, by any means authorized by this chapter, any information concerning a wire, oral, or electronic communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

18 U.S.C. §2517.

In response to defendants' motion, the USAO argues that because pretrial discovery does not fall into any one of these categories, the office is statutorily prohibited from disclosing

4

wiretaps, or information learned from wiretaps, at this time. (Dckt. #421 at 2). According to the USAO, pretrial disclosure would not be "appropriate to the proper performance" of any officer's official duties under sections (1) and (2) of §2517,[2] and section (3) allows for disclosure only "while giving testimony under oath or affirmation in any proceeding," (i.e., at trial).

Defendants respond that Title III does not apply here because the recordings were consensual. Alternatively, they argue that Title III permits pretrial disclosure in instances such as this one, where prohibiting disclosure would result in an "informational imbalance." The District Court recently addressed and rejected these same arguments in *In re Watts Coordinated Pretrial Proceedings*, No. 19-cv-1717, Order (N.D.Ill. Jan. 19, 2022) (hereinafter "*Watts* Order"). This Court agrees with the decision in *Watts* and denies defendants' motion to compel for the reasons stated below.

### A. The wiretap recordings were not consensual and are, therefore, subject to Title III's restrictions.

The Seventh Circuit has held that conversations intercepted by, or with the consent of, one of the parties are not subject to Title III restrictions because "Section 2517(3) does not come into play" when a recording is consensual. *In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621, 625 (7th Cir. 2000); *see also Watts* Order at 8 (interpreting the Seventh Circuit's finding to mean that consensual recordings fall "outside the disclosure limits of Section 2517"). Relying on *In re High Fructose Corn Syrup*, defendants argue that Title III does not apply to the

---

[2] Defendants briefly argue that pretrial disclosure of the recordings would constitute an "appropriate use" within the meaning of sub-sections (1) and (2) of §2517. According to defendants, because "[t]he present lawsuit grows out of a criminal investigation that the Gang Team conducted with the DEA," an appropriate use of the evidence "includes the officers' use of that evidence to defend against allegations of misconduct arising out of that investigation." (Dckt. #416 at 7). The Court disagrees and finds that by permitting disclosure or use of wiretaps only when "appropriate to the proper performance of the *official duties* of the officer," sub-sections (1) and (2) of the statute apply only to law enforcement efforts. Therefore, sub-section (3) of §2517 is the only sub-section that might apply to use in civil litigation.

5

recordings between Payne and Perez "because they were made with the consent of at least one party." (Dckt. #428 at 2). However, because defendants "were not aware of the issue of consent" until reading the USAO's response, they waited until their reply brief to raise this argument. (Dckt. #430 at n.2). It is well-settled that arguments first raised in a reply are waived, *see, e.g., White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021); *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019), and the Court will apply waiver here.

In any event, even if waiver were not applicable, defendants' consent argument fails given the facts here. Defendants admit in their sur-sur-reply that Perez was *never informed* of the Title III wiretap on Payne's phone – a fact they omitted from their reply brief when they initially argued that the recordings were consensual.³ (Dckt. #430 at 5). Indeed, according to defendants, Perez did not know "*how* the phone calls were being recorded, *who* was listening, or *when* the conversations were being intercepted." (*Id.*) (emphasis in original). Nonetheless, they argue that Perez's consent to having his calls with Payne recorded via wiretap was "implied." The Court disagrees.

Perez could not consent to the wiretap recordings – impliedly or otherwise – if he did not know the recordings were taking place. Defendants' invocation of *Giegler v. Abele*, No. 18-cv-1120, 2018 WL 5775922, at *1 (E.D.Wis. Nov. 2, 2018), is unavailing. In *Giegler*, the court found that "[s]o long as [an] inmate is given *meaningful notice* that his or her telephone calls over institutional phones are subject to surveillance, the decision to engage in conversations over those phones constitutes implied consent to such surveillance." *Id.* (emphasis added). In this case, no meaningful notice was given. Perez's awareness that his conduct was under the

---

³ Defendants' belated admission may well have been prompted by the USAO's observation that it was highly unlikely that officers informed Perez about the wiretap, as doing so would have put both the investigation and the officers themselves at risk. (Dckt. #429 at 4).

6

observation of law enforcement (namely, he was instructed to show officers his text messages, call Payne in their presence, submit to a body search, and carry a recording device for use during the controlled buy) does not equate to the type of explicit warning that his calls were being recorded that the inmates in *Giegler* received. *Id.* (noting that the inmates were expressly warned that their "telephone calls over institutional phones *are* subject to surveillance.") (emphasis added). Thus, Perez's knowledge that he was under surveillance in the above manner does not provide a basis to imply that he both knew about and consented to the recording of his calls with Payne.

Furthermore, even if Perez's consent to being recorded via wiretap could be inferred from his participation in the controlled buy (again, it cannot), Perez asserts that he only agreed to cooperate with the Gang Team after having been tortured. If this is true, his consent to any observation was given under duress and was, therefore, invalid. Perez's insistence that he did not willingly consent to cooperating with the officers' investigation in *any* capacity further distinguishes this case from those where there was no question that the recordings were consensual. *See, e.g., High Fructose Corn Syrup*, 216 F.3d at 624-26 (finding Title III did not apply to recordings made by an FBI informant); *United States v. Lewis*, 406 F.3d 11, 15 (1st Cir. 2005) (party moving to suppress recordings conceded they were consensual). Accordingly, the Court finds that the wiretap recordings of conversations between Perez and Payne fall under Title III's restrictions because there is no showing that Perez consented to the recording of the calls.

    **B.**    **Title III prohibits the disclosure of wiretap recordings during pretrial discovery.**

In *United States v. Dorfman*, the Seventh Circuit construed §2517, reviewed the pertinent legislative history, and determined that the list of permissible uses and disclosures of Title III wiretaps contained in subsections (1)-(3) was exhaustive. 690 F.2d 1230, 1232 (7th Cir. 1982).

7

In other words, the court found that "[b]y permitting disclosure of lawfully obtained wiretap evidence only under the specific circumstances listed in 18 U.S.C. §2517, Title III implies that what is not permitted is forbidden."[4] *Id.* Although *Dorfman* involved requests by the media for the disclosure of Title III materials related to the criminal investigation of senior labor union officers, its interpretation of §2517 applies equally to discovery requests by civil litigants and, thus, prohibits pretrial disclosure of Title III wiretaps. *See Watts* Order at 6, 7-11 (barring request for pretrial disclosure of Title III materials during discovery in a civil case on the ground that "nothing in the [*Dorfman*] decision suggests that the court's reading of Section 2517 was unique to media requests"); *In re Motion to Unseal Electronic Surveillance Evidence*, 990 F.2d 1015, 1018-20 (8th Cir.1993) (en banc) ("At no point does section 2517 authorize pretrial disclosure to private litigants.").

Notwithstanding *Dorfman* and the other caselaw cited above, defendants cite to the decision in *S.E.C. v. Rajaratnam*, 622 F.3d 159, 182 (2d Cir. 2010) to support their request for the Title III materials in this case. In *Rajaratnam*, the Second Circuit permitted a party to obtain wiretap materials during civil pretrial discovery because the opposing parties had already accessed the recordings during a related criminal case. *Id.* The Second Circuit opined that prohibiting the disclosure of wiretaps in such a circumstance would have "create[d] an informational imbalance" antithetical to the "role of civil discovery in ensuring informational equality between the parties." *Id.* at 175. Defendants argue that a similar imbalance is present here because Perez – as a participant in the recorded conversations at issue – has the unfair

---

[4] The Sixth and Eleventh Circuits have similarly construed §2517. *See United States v. Wuliger*, 981 F.2d 1497, 1506 (6th Cir. 1992) ("[B]ecause the Act sets out when certain uses or disclosures of wiretap material are authorized, it may be implied that 'what is not permitted is forbidden.'"); *United Kingdom v. United States*, 238 F.3d 1312, 1322-23 (11th Cir. 2001) ("Courts interpreting [Section 2517] have held that the statute generally bars the disclosure of the contents of conversations intercepted through a wiretap absent a specific statutory authorization.").

advantage of already knowing what the recordings will reveal. Defendants' reliance on *Rajaratnam* is misplaced for two reasons.

First, the holding in *Rajaratnam*, which permitted pretrial disclosure of Title III materials in civil discovery, is irreconcilable with the Seventh Circuit's holding in *Dorfman*. As the *Rajaratnam* court recognized, the Second Circuit had, on a prior occasion, considered and expressly rejected *Dorfman*'s interpretation of §2517. *Id.* at 176-77 & n.14 (citing *Application of Newsday, Inc.*, 895 F.2d 74, 77 (2d Cir. 1990)) ("Although Appellants can point to no provision in Title III prohibiting the disclosure at issue, they argue more broadly that Title III's failure expressly to permit the disclosure at issue implicitly prohibits it. That argument is foreclosed by our decision in [*Newman*]."). This Court is bound by *Dorfman* even if one could argue – as defendants do – that denying disclosure during civil discovery but permitting disclosure at trial "is at odds with commonsense." (Dckt. #416 at 6); *see Watts* Order, at 6 (rejecting plaintiffs' effort to rely on *Rajaratnam* and holding that the court was "bound by *Dorfman*" and its less expansive interpretation of §2517).[5] Thus, this Court is powerless to read §2517 in the more expansive manner that defendants urge "even if it would seem prudent or practical to do so." *Watts* Order, at 10.

Second, even if the Court were at liberty to consider adopting the holding in *Rajaratnam*, the facts in this case are distinguishable in a material way. In *Rajaratnam*, parties on one side in the civil case had already obtained copies of the Title III wiretapped communications sought by the opposing party during the course of a related criminal case. *Rajaratnam*, 622 F.3d at 165. Here, by contrast, Perez does not have copies of the Title III recordings at issue. To the Court's

---

[5] *See also High Fructose Corn Syrup*, 216 F.3d at 624 (observing that this limitation "would be a particularly strange [one]."). The Court notes that the Seventh Circuit neither mentioned *Dorfman* nor overruled its interpretation of §2517 in *High Fructose Corn Syrup.*

9

knowledge, no court has extended the rationale of *Rajaratnam* to hold that a party is entitled to obtain copies of Title III recordings in civil discovery simply because an opposing party – who does not have a copy of the recordings – participated in the recorded conversation. Such a holding would effectively – and impermissibly – amend §2517 by adding a fourth circumstance under which Title III materials could be disclosed (i.e., permitting disclosure whenever a party in a civil case was a participant in a conversation that was recorded pursuant to Title III).

      Finally, for the same reasons cited above, the Court rejects defendants' alternative suggestion that the Court "order the Government to produce the Title III recordings immediately after the jury is empaneled in the underlying trial" and before any actual testimony is given. (Dckt. #428 at 4). To reiterate, under §2517, the contents of wiretap recordings may only be disclosed "while giving testimony under oath or affirmation." *See Dorfman*, 690 F.3d at 1231; *Watts* Order at 6 (finding that "the court in *Dorfman* read Section 2517(3) as permitting only testimonial disclosure"); *Certain Interested Individuals v. Pulitzer Publ'g Co.*, 895 F.2d 460, 465 (8th Cir. 1990) (rejecting argument that wiretap information may be disclosed in a search warrant affidavit because the §2517(3) exception is "testimonial, that is, it authorizes disclosure only '*while giving testimony*'") (emphasis in original).

10

**CONCLUSION**

For the foregoing reasons, defendants' motion to compel the disclosure of wiretap recordings of conversations between Perez and Payne, (Dckt. #416), is denied. Because discovery was reopened for the limited purpose of allowing defendants to seek production of the Title III recordings, discovery is now closed.

**ENTERED:** May 20, 2022

_____
**Jeffrey I. Cummings**
**United States Magistrate Judge**